## JAMES BUCHANAN *v.* CAROLINE ATKINSON.

Evidence—Action for Slander—Conversation by Parties in Interview Sought by Plaintiff.

Conversations between parties, in an action for slander, at a meeting, solicited by the plaintiff, through her agent, should be permitted to go to the jury to enable them to form a correct judgment as to the motive of defendant.

Same.

Explanations offered at such meeting, by the defendant, is competent evidence, tending to explain the motive of what he said to the agent.

Same.

Remarks of plaintiff to a third person, conveying the same meaning, as that imputed to defendant, should also be permitted to go to the jury.

Slander—Plaintiff Instrumental in Starting Report, Upon Which Action Based.

Where a plaintiff is instrumental in starting a report, repeated by another, upon which an action for slander is based, even though it be in a jocular manner, recovery of damages thereon, cannot be had.

Same.

Plaintiff would not be entitled to ask a jury to consider the slander

as of that aggrivated character, as if the defendant himself had started it.

**Slander—Speaking of Actionable Words Import Malice.**

The speaking of actionable words import malice, and will be regarded, prima facie, as malicious; but this will not preclude the defendant from showing the peculiar circumstances under which they were spoken, and the motive, in mitigation of damages.

**Same.**

But when the issue is not in speaking the words, but repeating a report, this cannot go to the full justification of the defendant and defeat the action.

APPEAL FROM TAYLOR CIRCUIT COURT.

July 23, 1869.

OPINION OF THE COURT BY JUDGE WILLIAMS:

This action of slander by appellee against appellant resulted in a verdict for the plaintiff of $460, which defendant seeks to reverse.

It was for repeating a report that one Creel had taken, without paying therefor, a cap from a store in Lebanon, and that she had worn it, and was as deep in the mud as he was in the mire.

The defendant had married a relative of the plaintiff and insists that he never did repeat the report with the intention of charging her with stealing the cap, but all that he said in relation thereto was a view to cause her to break off her association with Creel, whom he regarded an unfit associate for her.

Several erorrs are assigned on the admission and rejection of evidence. After the report had obtained circulation, a note was written to the defendant to meet on a given day at the house of Griffith to give his author and talk over the matter; this was carried by her brother-in-law Faulkner, and he details what occurred then, and this is mainly the evidence to sustain the charge.

Buchanan met pursuant to this request, and there the parties talked over the affair, and his then explanations were offered in evidence by him, which were rejected. This interview was sought by the plaintiff; she sustains her charge by the statements of her

agent and brother-in-law made whilst performing his agency in procuring the interview.

It seems to us' what occurred at this interview sought by plaintiff, should go to the jury, to enable them to form a correct judgment as to the defendant's motive, and also in some degree tending to explain the motive of what he said to her agent, he being the sole person present, when the conversation he detailed occurred, and which was superinduced by the request to meet at Griffith's. Buchanan also offered the deposition of Mrs. Griffith to prove that before the report had gotten into circulation on a certain occasion riding along the road Mrs. Buchanan asked plaintiff where she got the cap, she was then wearing, when the plaintiff, laughing said: "Oh, I stole it." When riding along further Mrs. Griffith asked her where she got it, when she again laughingly remarked, *"Oh, I stole it,"* and then continued, *"no, I did not steal it, Charley Creel stole it somewhere in Lebanon, and put it on and wore it around as big as if he had paid for it;"* and that after arriving at witness' house her husband asked plaintiff where she got the cap, and she remarked, *"Ah, that's a secret."*

It was proven in the case that Creel was a man of bad character.

Considering that these parties were relatives, Buchanan a man of family, and plaintiff a single lady, all this evidence would go to show the motive at least of Buchanan in interfering in any manner, and might have an important bearing on the question of damages.

Surely, if plaintiff was instrumental herself in getting the report into circulation, even in a laughing, but still, to say the least, a singular manner, she would not be entitled to ask a jury to consider the slander as of that aggravated character as if the defendant had himself started it.

This case presents some novel features never before brought to our minds from books or experience.

The speaking of actionable words import malice, and will be regarded *prima facie* as malicious; but this does not preclude the defendant from showing the peculiar circumstances under which they were spoken, and the motive with which they were spoken, in mitigation of damages, though when, as in this case, the issue is not guilty of speaking the words, this cannot go to the full justification of the party and defeat of the action.

The peculiarities of this case demanded that all these circum-

stances should have been permitted to go to the jury to enable them to determine whether Buchanan's conduct was in fact malicious or friendly towards plaintiff, and to determine whether or not she had been instrumental in getting said report into circulation in the first instance.

Wherefore, the judgment is reversed.

*J. R. Robinson, James, for appellant.*

*A. Barrett, for appellee.*

